**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| **SERVECO NORTH AMERICA LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _______________ |
| | ) | |
| v. | ) | |
| | ) | |
| **GUMERSINDO MARTINEZ, a/k/a GEORGE MARTINEZ, an individual,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff ServeCo North America LLC ("ServeCo"), for its Complaint against Defendant Gumersindo Martinez, also known as George Martinez ("Martinez"), alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 et seq., that ServeCo does not infringe and is not liable for infringement of any claim of United States Patent No. 12,618,781 B2 ("the '781 patent"), and that the claims of the '781 patent are invalid.

2. The device that Martinez accuses of infringement is a device that helps a user to measure the depth of depressions on the top surface of a mattress (the

"Device"). The Device was developed into a commercial product by ServeCo with Martinez's assistance and involvement. Martinez therefore developed the Device, at least in part, while he was an employee of ServeCo, using ServeCo's time, personnel, facilities, equipment, materials, and funds. Martinez encouraged and assisted ServeCo's use of the Device in ServeCo's business. ServeCo used the Device openly, notoriously, and continuously, without Martinez's objection, for almost 20 months. Only when Martinez was terminated for cause on August 21, 2026, did he raise his alleged concerns that the Device was an unauthorized use of a patent he had filed.

3. On information and belief, Martinez filed a provisional patent application related to the Device in May 2024. On information and belief, Martinez filed an application for a utility patent related to the Device in May 2025, while he was employed by ServeCo. Martinez kept ServeCo's Chief Executive Officer informed of the patent application process. At one time, when he was still a ServeCo employee, Martinez suggested that the number of the '781 patent be placed on the Devices that ServeCo was using in its business.

4. On or around August 21, 2026, counsel for Martinez sent a cease-and-desist letter to ServeCo, asserting that the '781 Patent barred ServeCo from making, selling, using, or otherwise commercializing the Device. This was the first time that Martinez alleged that ServeCo's use of the Device constituted patent infringement.

5. On information and belief, Martinez has told several of ServeCo's customers that ServeCo is infringing the '781 patent by using the Device.

6. ServeCo does not infringe the '781 patent at least because ServeCo holds an implied license to practice the claimed subject matter.

7. The '781 patent is invalid over the prior art.

## THE PARTIES

8. Plaintiff ServeCo is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business at 19 Smiley Ingram Road SE, Cartersville, Georgia 30121, within this District and Division.

9. Defendant Gumersindo Martinez, also known as George Martinez, is an individual residing in Centerton, Benton County, Arkansas.

10. Martinez is named as an inventor on the '781 patent. Martinez purports to be the owner of all right, title, and interest in the '781 patent. The '781 patent also identifies Daniel Esteban Viviani, as a co-inventor. ServeCo reserves the right to amend this Complaint to add Mr. Viviani or any other person or entity holding an ownership interest in the '781 patent as a party if discovery reveals that any such interests exist.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, because this action arises under the Patent Laws of the United States and presents an actual controversy within this Court's jurisdiction.

12. An actual, substantial, and continuing justiciable controversy exists between ServeCo and Martinez concerning the infringement, validity, and enforceability of the '781 patent, and concerning ServeCo's right to continue using the Device, which controversy is of sufficient immediacy and reality to warrant declaratory relief.

13. This Court has personal jurisdiction over Martinez under the Georgia Long-Arm Statute, O.C.G.A. § 9-10-91, and consistent with due process.

14. Martinez was employed by ServeCo, a Georgia company, pursuant to an employment agreement governed by Georgia law from at least January 1, 2025 until ServeCo terminated his employment for cause on August 21, 2026. Martinez's employment agreement provides that his duties "shall be rendered at the office of Premier Furniture Consultant, LLC in Bentonville Arkansas, at the Company in Cartersville, Georgia." During that employment Martinez transacted business in Georgia, worked in Georgia, and developed, built, and tested the Device, using ServeCo's Georgia facilities, personnel, and resources. Martinez routinely worked

with ServeCo's officers, including its Chief Executive Officer and Chief Technology Officer, regarding the Device.

15. Martinez has retained Georgia counsel to purposefully direct his patent enforcement activity against ServeCo in the state of Georgia. On August 21, 2026, Martinez's counsel, Sutton Law Group, LLC of Marietta, Georgia, sent ServeCo's counsel in Georgia an email and a letter demanding that ServeCo cease producing, using, and advertising ACT Vision and accusing ServeCo of infringing the '781 patent.

16. The August 21 letter also stated: "[W]e reserve the right to proceed in accordance with O.C.G.A. § 9-11-65 to seek an injunction against you. **You are on notice that we intend to proceed under that subsection to obtain an injunction to prevent your continued unauthorized use**." (emphasis in original). Although Martinez's specific reference to Georgia law was meritless,[1] the letter reflects his intent to enforce patent rights in Georgia.

17. On September 3, 2026, Martinez's Georgia counsel sent ServeCo a letter demanding that ServeCo preserve any evidence regarding Martinez's purported intellectual property.

[1] "Federal courts have exclusive jurisdiction over cases 'arising under any Act of Congress relating to patents.' 28 U.S.C. § 1338(a)." *Gunn v. Minton*, 568 U.S. 251, 253 (2013).

18. Martinez has also communicated directly with ServeCo's customers about the '781 patent. Martinez's enforcement communications were directed to ServeCo's customer relationships, which ServeCo manages from its headquarters in Cartersville, Georgia. Martinez's communications with ServeCo's customers were intended to and did affect ServeCo's business in this District.

19. Martinez has additional contacts with Georgia. As President of Premier Furniture Consultant, LLC ("Premier"), an entity in which ServeCo holds a 50% membership interest, Martinez led a business whose operating agreement provides that "[a]ll Company administrative activities and subsequent public representation of business office will be at 19 Smiley Ingram Rd SE, Cartersville GA 30121." He signed, on Premier's behalf, an administrative services agreement with ServeCo that is governed by Georgia law and under which Martinez "consent[ed] to the jurisdiction of the state and federal courts located in the State of Georgia."

20. On information and belief, Martinez has additional contacts with Georgia, including contacts related to providing services to Macy's department stores in Georgia. Martinez's testing and commercialization, product development, marketing, and software development in connection with the Device took place in Georgia. Martinez maintained an office at the ServeCo facility in Georgia, where Martinez worked approximately five days each month in his capacity as President of ServeCo Repair. As President of ServeCo Repair, Martinez worked in Georgia

on developing the Device, developing the ServeCo Repair service network, training and onboarding new service technicians, participating in general ServeCo company meetings, and visiting and presenting to sales agents and customers, among other activities.

21. Martinez's contacts with Georgia are such that the exercise of personal jurisdiction over him in this District comports with traditional notions of fair play and substantial justice, and Martinez should reasonably anticipate being haled into court in this District.

22. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this District, including Martinez's employment with ServeCo, the development of the Device, ServeCo's use of the accused device, Martinez's accusations of infringement directed into this District, and the injury to ServeCo's business and customer relationships.

## FACTUAL BACKGROUND

### *A. ServeCo and Its Business*

23. ServeCo provides post-sale furniture and mattress services to manufacturers and retailers in the home furnishings and bedding industry. Those services include extended warranty and service-contract programs and on-site furniture inspection, cleaning and repair.

24. A recurring task in ServeCo's business is measuring depressions in the top surface of a mattress to determine whether the mattress meets certain warranty conditions.

25. ServeCo and others in the industry have performed such measurements using methods that have been well known for many years. Known methods for measuring the depth of a mattress surface depression include using a taut string stretched across the top surface of a mattress and using a rigid straight edge laid across the top surface of the mattress. Mr. Martinez acknowledged these methods as prior art by describing them in the '781 patent.

### *B. Martinez's Employment at ServeCo and Development of the Device*

26. Martinez was employed by ServeCo from January 1, 2025 through August 26, 2026, in the position of President of Premier Furniture Consultant, LLC d/b/a ServeCo Repair. During this employment, Martinez reported to Anthony Milano, ServeCo's Chief Executive Officer.

27. Martinez was responsible for the management and development of the ServeCo Repair field service part of ServeCo's business. In this role, Martinez was responsible for supervising and managing field service technicians, and for managing the quality, knowledge, tools, equipment, and vehicles used by ServeCo to provide its in-home services.

28. During his employment, Martinez worked with several ServeCo employees on the development and commercialization of the Device.

29. Martinez developed the Device, in part, during his working hours at ServeCo, on ServeCo premises, using ServeCo's resources, and in the course of performing his work as a ServeCo employee.

30. Martinez used ServeCo's resources to develop certain facets of the Device, including without limitation ServeCo's software-development resources; its laser displacement sensors, microcontroller modules, and 3D-printed housings used to build its units; test mattresses and inspection jobs; and the time of the personnel who built, tested, and demonstrated it. Martinez used ServeCo's showroom facility for demonstrating the Device and for filming marketing and training videos related to the Device.

31. ServeCo funded development of the Device, including by paying for the laser displacement sensors, microcontroller modules, 3D-printed housings, and other components used to build functioning units, the development of the Device's measurement application, and building units for tradeshow and customer demonstrations.

32. Several ServeCo personnel devoted ServeCo-paid work hours to assist Martinez in developing, building, testing, and refining the Device, including Tony

Milano, Michele Zanin (who led the development of the Device's measurement application), John Roberts, Giovani Carranza, and Raquel Jimenez.

33. Martinez together with John Roberts built several additional prototypes of the Device at ServeCo, using ServeCo's facilities and materials, and tested those prototypes in the course of ServeCo's business operations.

34. Martinez accepted ServeCo's assistance, resources, and funding in developing the Device, and did so knowingly and voluntarily.

35. Prior to on or about August 21, 2026, Martinez had never asserted that ServeCo lacked or needed his permission to use the Device, that ServeCo would be required to pay for the use of the Device, or that he intended to seek patent protection and enforce it against ServeCo.

36. Martinez executed agreements with ServeCo relating to the use of inventions and work product developed during his employment, including a January 1, 2025 employment agreement and his acknowledgement of the ServeCo Employee Handbook. ServeCo reserves the right to amend this Complaint to assert additional claims arising under those agreements.

***C. ServeCo's Open and Continuous Use with Martinez's Knowledge***

37. By at least February 2026, ServeCo was openly and continuously using the Device in its business. ServeCo built functioning units of the Device and demonstrated them openly, including at ServeCo's showroom, the ISPA industry

trade show, the furniture trade show in High Point, North Carolina and Las Vegas, Nevada, and to customers including RC Willey.

38. Martinez knew of and participated in ServeCo's use of the Device during his employment. ServeCo used the Device in its business with Martinez's full knowledge and approval.

39. Martinez consented to, encouraged, acquiesced in, and assisted ServeCo's use of the Device.

40. Martinez never objected to ServeCo's use of the device until he was terminated on August 21, 2026. Until August 21, 2026, throughout almost 20 months of employment with ServeCo, Martinez never objected to ServeCo's use of the Device, never asserted that such use required his permission, and never demanded compensation for such use.

***D. The '781 Patent***

41. The '781 patent is entitled "System and Methods for Detecting Mattress Defects" and issued on May 5, 2026. A true and correct copy of the '781 patent is attached as Exhibit A.

42. The '781 patent issued from U.S. Application No. 19/197,417, filed May 2, 2025, which was published on November 13, 2025, as U.S. Publication No. 2025/0347630 A1, and which claims priority to U.S. Provisional Application No. 63/643,742, filed May 7, 2024.

43. The ’781 patent contains twenty claims. Claims 1, 11, and 20 are independent claims. Claim 1 purports to be directed to a mattress defect detection system that includes a mattress defect detection device together with a user application residing in memory on a computing device. Claim 11 purports to be directed to a mattress defect detection system reciting the hardware without requiring a computing device or user application. Claim 20 purports to be directed to a method of analyzing a mattress using the system of claim 1.

44. The independent claims each recite an elongate guide rail, a pair of support legs each providing a support foot configured for being placed on a substantially horizontal surface, and a control housing slidably engaged with the guide rail and capable of selectively traversing a rail length of the guide rail, the control housing providing at least one measurement laser oriented to emit a laser beam toward the top surface of the mattress in a direction perpendicular to that surface and at least one microcontroller in electrical communication with the measurement laser.

45. Claims 1 and 20 further require a user application residing in memory on at least one computing device that receives and processes depression depth measurements, determines whether a depression depth exceeds a pre-defined threshold, and determines that the mattress is defective.

46. Each independent claim expressly limits the defect to be detected to a depression in the top surface of the mattress "at a location where no physical object is actively present nor positioned directly in contact with the top surface of the mattress."

***E. Martinez's Accusations Against ServeCo and Its Customers***

47. On or about August 21, 2026, Martinez, through counsel, sent a communication to ServeCo asserting that ServeCo infringes the '781 patent and demanding that ServeCo cease and desist using the Device in its business.

48. Martinez has communicated with ServeCo's customers regarding the '781 patent, including an August 26, 2026 email sent to executives of ServeCo customer RC Willey. On information and belief, Martinez told RC Willey and other ServeCo customers that ServeCo has infringed the '781 patent.

49. Martinez made those statements to ServeCo's customers despite his knowledge that the Device was developed at ServeCo with ServeCo's resources and that ServeCo had used it openly with his knowledge and consent.

50. Martinez's statements to ServeCo's customers have caused and are causing injury to ServeCo, including customer inquiries and concern. For example, RC Willey's executives asked ServeCo to explain emails they had received from Martinez accusing ServeCo of infringement.

### *F. An Actual Controversy Exists*

51. By reason of the foregoing, an actual and justiciable controversy exists between ServeCo and Martinez regarding whether ServeCo infringes any valid and enforceable claim of the ’781 patent, whether the claims of the ’781 patent are valid, and whether ServeCo holds an implied license to practice the claimed subject matter.

52. The controversy is definite and concrete, touches the legal relations of parties having adverse legal interests, is real and substantial, and admits of specific relief through a decree of a conclusive character.

53. Absent a declaration of its rights, ServeCo will continue to suffer injury and uncertainty in the conduct of its business and in its relationships with its customers.

## COUNT I

## Declaratory Judgment of Non-Infringement of the ’781 Patent

54. ServeCo has not infringed and does not infringe, directly or indirectly, literally, or under the doctrine of equivalents, any claim of the ’781 patent.

55. ServeCo does not induce infringement of any claim of the ’781 patent under 35 U.S.C. § 271(b), because there is no direct infringement, and because ServeCo has not taken any act with the specific intent to cause another to infringe and lacked knowledge that any induced act would constitute infringement.

56. ServeCo does not contribute to infringement of any claim of the ’781 patent under 35 U.S.C. § 271(c), because there is no direct infringement and because the Device and its components have substantial non-infringing uses.

57. With respect to method claim 20, ServeCo does not infringe because it does not perform every step of the claimed method, nor is ServeCo engaged in a joint enterprise with any party or direct or in control of any party performing any recited step.

58. Further and independently, ServeCo is not liable for infringement because ServeCo holds an implied license to practice the subject matter claimed in the ’781 patent, as set forth in Count III below.

59. Martinez’s accusations have created an actual controversy regarding infringement that only this Court can resolve.

60. ServeCo is entitled to a declaratory judgment that it has not infringed and does not infringe any claim of the ’781 patent and is not liable to Martinez for infringement of the ’781 patent.

## COUNT II

### Declaratory Judgment of Invalidity of the ’781 Patent

61. The claims of the ’781 patent are invalid for failure to satisfy one or more of the conditions and requirements for patentability set forth in Title 35 of the United States Code, including 35 U.S.C. §§ 103 and 112.

62. The effective filing date of the claims of the ’781 patent is no earlier than May 7, 2024, the filing date of Provisional Application No. 63/643,742.

***A. Obviousness Under 35 U.S.C. § 103 over Conigliaro***

63. United States Patent No. 8,677,646 (“the ’646 patent”), entitled “Mattress Measurement Device,” issued on March 25, 2014 to Charles Conigliaro. The ’646 patent issued more than one year before the effective filing date of the ’781 patent and constitutes prior art to the ’781 patent under 35 U.S.C. § 103.

64. The ’646 patent discloses: “On the distal end of each side rail is a positioning arm that, by the use of gravity, maintains the cross and side rails in a substantially vertical position when placed on top of the mattress while also centering the device over the mattress surface. A measuring arm can then be positioned along a desired rail over the suspected sag, and a direct measurement can be made from the distal end of the measuring arm to a surface of the rail to obtain a subjective determination of the depth of the sag.”

65. The claims of the ’781 patent are invalid as obvious under 35 U.S.C. § 103 over the ’646 patent in combination with the prior art that Martinez described in the specification of the ’781 patent.

66. A person of ordinary skill in the art as of May 2024, a person with a bachelor’s degree in mechanical or electrical engineering and two or more years of experience in dimensional metrology or measurement systems, or equivalent

experience, would have been motivated to combine the teachings of the ’646 patent and the prior art described in the specification of the ’781 patent, and would have had a reasonable expectation of success in doing so.

67. The motivation to combine arises from, among other things: the fact that the references address the measurement of surface profiles by traversing a measuring device over a surface; the well-known and long-standing desire in the inspection arts to replace manual measurement with automated, non-contact measurement in order to improve accuracy, repeatability, and speed; the express teaching in the prior art that laser rangefinders may be substituted for mechanical measurement; and the predictable result of mounting a known sensor on a known carriage to perform its known function.

68. The combination represents no more than the use of known techniques to improve similar devices in the same way, the simple substitution of one known element for another to obtain predictable results, and the application of a known technique to a known device ready for improvement. Any differences between the prior art and the claims of the ’781 patent would have been obvious to a person of ordinary skill in the art.

69. Accordingly, claims 1, 11, and 20 of the ’781 patent, and each claim depending therefrom, are invalid as obvious under 35 U.S.C. § 103 in light of the

combination of the teachings of the ’646 patent and the prior art, including that described in the specification of the ’781 patent.

***B. Obviousness Under 35 U.S.C. § 103 over Nilsson in view of Baker***

70. United States Patent No. 6,897,967 (“the ’967 patent”), entitled “Method of Grading Railroad Beds and a Laser Measuring Device,” issued on May 24, 2005 to Dan Nilsson. United States Patent No. 10,912,693 (“the Baker ’693 patent”), entitled “Patient Immersion and Support Surface Life Determination Using RADAR and RFID,” issued on February 9, 2021 to Steven D. Baker and Frank E. Sauser. Each of the ’967 patent and the Baker ’693 patent issued before the effective filing date of the ’781 patent and constitutes prior art under 35 U.S.C. § 102(a)(1) and § 102(a)(2).

71. The ’967 patent discloses: “[A] laser measuring device according to the invention comprises a rail car with a transverse guide beam and a carriage with a laser camera arranged to be movable along the guide beam, and the laser camera is directed downwards to read the distance to the ground and a computer is coupled to register the position of the carriage on the rail and the distance from the camera to the ground.”

72. The Baker ’693 patent discloses: “A radar apparatus, including at least one antenna situated beneath the upper surface and spatially separated therefrom, is adapted to emit a pulse which travels through the support structure and is reflected,

by either the upper surface or a surrogate thereof, as a reflected signal back to the radar antenna. The emitted pulse and reflected signal comprise a ranging signal. The patient support system also includes circuitry that determines a life parameter of the core support structure as a function of at least the ranging signal. The patient support system also includes an RFID tag having a memory. The RFID tag is in communication with the circuitry."

73. The claims of the '781 patent are invalid as obvious under 35 U.S.C. § 103 over the '967 patent in combination with the Baker '693 patent.

74. A person of ordinary skill in the art as of May 2024, a person with a bachelor's degree in mechanical or electrical engineering and two or more years of experience in dimensional metrology or measuring systems, or equivalent experience, would have been motivated to combine the teachings of the '967 and Baker '693 patents, and would have had a reasonable expectation of success in doing so.

75. The motivation to combine arises from, among other things: the fact that the references address the measurement of surface profiles by traversing a sensor over a surface; the well-known and long-standing desire in the inspection arts to replace manual measurement with automated, non-contact measurement in order to improve accuracy, repeatability, and speed; the express teaching in the prior art that laser rangefinders may be substituted for mechanical measurement; and the

predictable result of mounting a known sensor on a known carriage to perform its known function.

76. The combination represents no more than the use of known techniques to improve similar devices in the same way, the simple substitution of one known element for another to obtain predictable results, and the application of a known technique to a known device ready for improvement. Any differences between the prior art and the claims of the ’781 patent would have been obvious to a person of ordinary skill in the art.

### *C. Obviousness Under 35 U.S.C. § 103 over Sweers in view of Halliday*

77. United States Patent No. 11,555,693 (“the Sweers ’693 patent”), entitled “Measurement of Surface Profiles Using Unmanned Aerial Vehicles,” issued on January 17, 2023, and is assigned to The Boeing Company. The application that matured into the Sweers ’693 patent was filed on May 12, 2020 and published on November 18, 2021.

78. United States Patent No. 12,156,595 (“the ’595 patent”), entitled “Mattress and Associated Methods for Providing Customized Spine and Body Support,” resulted from an application filed on October 7, 2021 and issued on December 3, 2024, naming Steven R. Halliday and Michael V. Halliday as inventors.

79. Assuming the challenged claims of the ’781 patent are entitled to the May 7, 2024 priority date claimed through U.S. Provisional Application No.

63/643,742, the Sweers ’693 patent qualifies as prior art under 35 U.S.C. § 102(a)(1) because it was publicly available before the effective filing date of the challenged claims, and under § 102(a)(2) because it names another inventor and was effectively filed before that date. The ’595 patent, although not issued or otherwise published until after May 7, 2024, qualifies as prior art under § 102(a)(2) to the extent the subject matter relied upon was effectively filed before the effective filing date of the challenged claims.

80. The ’595 patent discloses: “Mattress sag is typically found in the center of used mattresses where most of the sleeper's mass is located (i.e., the crush zone). It can be objectively evaluated by placing a weighted target at each cell (e.g., by placing a fitted sheet with a grid as in FIG. 11 over the mattress) and then measuring how deeply the target settles into the mattress using a laser and vertical rule. Comparing all resulting cell measurements identifies the location(s) and maximum depths of all mattress sagging.”

81. The Sweers ’693 patent discloses: “a diagram showing a three-dimensional view of a line laser profiler 24 c at different positions for acquiring surface profile measurement data from an area on a surface 9. The line laser profiler 24 c may be mounted to the center of a motorized scanning traveling bridge (not shown in FIG. 13) which spans the opening in base 14 a of module frame 14 and is translatable in the Y directions. The line laser profiler 24 c is drawn in solid lines to

indicate its current position; the line laser profiler 24 c is drawn in dashed lines to indicate a previous position. At each position, the line laser profiler 24 c generates a curtain 81 of successive laser beams which optically scan the surface 9 along a line of laser spots 83 (indicated by dotted lines in FIG. 13). Thus, the line laser profiler 24 c may be mechanically scanned in the Y direction by moving the traveling bridge, while the line laser profiler itself is capable of optically scanning the surface 9 in the X direction by emitting a curtain 85 of laser beams in succession and receiving returned laser light."

82. The claims of the '781 patent are invalid as obvious under 35 U.S.C. § 103 over the '595 patent in combination with the Sweers '693 patent.

83. A person of ordinary skill in the art as of May 2024, a person with a bachelor's degree in mechanical or electrical engineering and two or more years of experience in dimensional metrology or measuring systems, or equivalent experience, would have been motivated to combine the teachings of the '595 and Sweers '693 patents, and would have had a reasonable expectation of success in doing so.

84. The motivation to combine arises from, among other things: the fact that the references address the measurement of surface profiles by traversing a sensor over a surface; the well-known and long-standing desire in the inspection arts to replace manual measurement with automated, non-contact measurement in order to

improve accuracy, repeatability, and speed; the express teaching in the prior art that laser rangefinders may be substituted for mechanical measurement; and the predictable result of mounting a known sensor on a known carriage to perform its known function.

85. The combination represents no more than the use of known techniques to improve similar devices in the same way, the simple substitution of one known element for another to obtain predictable results, and the application of a known technique to a known device ready for improvement. Any differences between the prior art and the claims of the ’781 patent would have been obvious to a person of ordinary skill in the art.

***D. Indefiniteness Under 35 U.S.C. § 112***

86. The claims of the ’781 patent are further invalid under 35 U.S.C. § 112(b) for failure to particularly point out and distinctly claim the subject matter regarded as the invention, because, among other things: (a) claims 12 through 19 recite “[t]he mattress defect detection device of claim 11,” whereas claim 11 is directed to a mattress defect detection *system*, leaving the scope of those claims indeterminate; and (b) claim 20, step (d), recites “the current measurement site,” for which no antecedent basis exists in claim 20 or in claim 1, such that a person of ordinary skill in the art would not be reasonably apprised of the scope of the claim.

## COUNT III

### Declaratory Judgment of Implied License

87. Martinez's entire course of conduct — developing the Device on ServeCo's time and at ServeCo's expense, providing the Device for ServeCo's use, building additional units for ServeCo, training ServeCo personnel in its use, using it himself on ServeCo's behalf, and encouraging ServeCo's open use of the Device for almost 20 months — demonstrates his consent to ServeCo's practice of the subject matter that Martinez purports is covered by the '781 patent.

88. Martinez's conduct would lead a reasonable person in ServeCo's position to understand that Martinez fully consented to ServeCo's use of the Device.

89. Martinez knew of and encouraged ServeCo's purchase of 100 laser heads for additional devices. After the '781 patent issued on May 5, 2026, he continued to participate in ServeCo's commercialization of the Device, including by presenting it to ServeCo's customer Macy's, and by continuing to consent and acquiesce to ServeCo's manufacture and use of the Device in its business.

90. ServeCo relied on Martinez's conduct in adopting use of the Device in its business, covering development and manufacturing costs, building and acquiring additional units, training its personnel to use the Device, incorporating the Device into its service protocols and customer commitments, and forgoing the development or purchase of alternative measurement equipment.

91. Because Martinez claims that the Devices he supplied to ServeCo have no reasonable non-infringing use, Martinez's supplying the Devices to ServeCo demonstrates that Martinez intended to and did grant ServeCo a license to use the Device in its business.

92. To the extent that one or more claims of the '781 patent cover the Device, ServeCo holds an implied license to practice the '781 patent.

93. ServeCo is entitled to a declaratory judgment that it holds an implied license to the '781 patent and that it is not liable to Martinez for using the Device.

## COUNT IV

## Declaratory Judgment of Equitable Estoppel Against Enforcement of the '781 Patent

94. ServeCo pleads this Count in the alternative to its other grounds for nonliability.

95. During his employment with ServeCo, Martinez provided ServeCo with the Device for use in its business. Martinez worked with ServeCo personnel to develop the Device. ServeCo furnished personnel, facilities, equipment, materials, and funds in connection with that development. Martinez was aware of, approved of, and encouraged ServeCo's purchase of 3D printing equipment and 100 laser heads for additional devices at a cost of more than $325 each.

96. After the '781 patent issued on May 5, 2026, Martinez continued to participate affirmatively in ServeCo's commercialization of the Device. On July 21,

2026, Martinez asked ServeCo's Chief Technology Officer, Michele Zanin, to assist with a presentation of the Device for ServeCo's customer Macy's. In response, Zanin provided the presentation to Martinez, copying ServeCo's Chief Executive Officer, Anthony Milano. Martinez thanked Zanin for the presentation that day.

97. In communications with ServeCo's Chief Executive Officer, Anthony Milano, between July 21 and July 27, 2026, Martinez reported that the Device was working and requested two test customers. These requests encouraged ServeCo to continue devoting company time and resources to demonstrating and implementing the Device in its business.

98. Martinez's participation in ServeCo's commercialization of the Device demonstrates that he had direct knowledge of and encouraged ServeCo's use of the Device in its business. His requests for ServeCo's assistance, acceptance of the resulting work, and encouragement of customer testing affirmatively communicated to ServeCo that it had his authorization to continue those activities notwithstanding his purported ownership of the '781 patent.

99. ServeCo reasonably understood from Martinez's conduct and communications that Martinez would not assert the '781 patent against ServeCo's activities commercializing the Device. In reliance on that assurance, ServeCo devoted time and resources to developing and manufacturing the Device. ServeCo purchased a commercial grade 3D printer to manufacture the Device. In further

reliance on that assurance, ServeCo used ServeCo's corporate office space in Georgia to train ServeCo personnel to use the Device and to produce promotional videos demonstrating the device. Had Martinez made clear that ServeCo's activity infringed the '781 patent, ServeCo would not have invested resources in developing or commercializing the Device.

100. Enforcement of the '781 patent against those activities would materially prejudice ServeCo because ServeCo has invested significant resources into commercializing the Device, and those resources would be lost if ServeCo were forced to pay a royalty on sales of the Device or enjoined from commercializing the Device. That prejudice would be a direct result of the change in ServeCo's position, which was induced by Martinez's conduct.

101. On or about August 21, 2026, Martinez reversed the position communicated by his participation with ServeCo in commercializing the Device. Through counsel, Martinez asserted that ServeCo's activities infringed the '781 patent, denied that ServeCo held any license or other permission, and demanded that ServeCo cease its activities and return the Device in its possession. Those demands encompass the development of the Device and marketing of the ACT-Vision system using the Device that Martinez had previously assisted and encouraged.

102. Martinez is estopped from asserting the '781 patent against ServeCo's manufacture and use of the Device because of Martinez's affirmative conduct

described above, ServeCo's reasonable reliance on that conduct, and the harm that ServeCo would incur if it were prohibited from making and using the Device.

103. An actual and continuing controversy exists concerning whether Martinez can enforce the '781 patent against ServeCo's ability to continue those activities. ServeCo requests a declaratory judgment that Martinez is estopped from asserting infringement against ServeCo based on those activities and from recovering infringement damages or obtaining injunctive relief against ServeCo for them.

## RESERVATION OF RIGHTS

104. ServeCo's investigation is continuing. ServeCo reserves the right to amend this Complaint to assert additional grounds of invalidity or unenforceability, additional prior art, additional claims arising under the agreements referenced in Paragraph 36, and additional claims arising out of Martinez's communications with ServeCo's customers, including claims for tortious interference and for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ServeCo respectfully requests that this Court enter judgment in its favor and against Defendant Martinez as follows:

A. Declaring that ServeCo has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of U.S. Patent No. 12,618,781;

B. Declaring that each claim of U.S. Patent No. 12,618,781 is invalid;

C. Declaring that ServeCo holds an implied license to practice the subject matter claimed in U.S. Patent No. 12,618,781;

D. Declaring that ServeCo is not liable to Martinez for infringement of U.S. Patent No. 12,618,781;

E. Permanently enjoining Martinez, and all persons acting in concert with him, from asserting or threatening to assert U.S. Patent No. 12,618,781 against ServeCo or against ServeCo's customers, distributors, suppliers, or users on account of the Device;

F. Declaring this case exceptional under 35 U.S.C. § 285 and awarding ServeCo its reasonable attorneys' fees;

G. Awarding ServeCo its costs of suit;

H. Awarding such other and further relief as this Court deems just and proper; and

I. Declaring that Martinez is equitably estopped from enforcing U.S. Patent No. 12,618,781 against ServeCo's manufacture and use of the Device in the mattress-inspection activities described in the equitable-

estoppel count, including their materially unchanged continuation within the scope established by Martinez's conduct and ServeCo's reliance, and that ServeCo is not liable to Martinez for patent infringement based on those activities.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff ServeCo North America LLC demands a trial by jury on all issues so triable.

Dated: October 6, 2026

/s/ *Shane Nichols*
**MEUNIER CARLIN & CURFMAN LLC**
A. Shane Nichols
Georgia Bar No. 542654
Warren J. Thomas
Georgia Bar No. 164714
Lee G. Hamilton
Georgia Bar No. 139644
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
404-645-7700
snichols@mcciplaw.com
wthomas@mcciplaw.com
lhamilton@mcciplaw.com
*Attorneys for Plaintiff ServeCo North America LLC*